UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD N. TOLHURST, JR.

                     Plaintiff,

v.                                                                          Case No. 5:15-CV-0428 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON          STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                  PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Richard N. Tolhurst, Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on July 12, 1966.  Plaintiff has a high school education, and has worked as a material handler.  Generally, Plaintiff's alleged disability consists of nerve damage, right elbow disorder, right knee disorder, sciatica, and Factor V Leiden disorder (a genetic blood clotting disorder).  The alleged onset date is February 1, 2010.

   B.  **Procedural History**

On May 11, 2010, Plaintiff applied for Disability Insurance Benefits.  Plaintiff's application was initially denied on November 3, 2010, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  On December 6, 2011, Plaintiff appeared in a video hearing before the ALJ, Andrew Henningfeld.  (T. 31-66.)  On January 27, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 14-30.)  On November 26, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  The alleged onset date is February 1, 2010.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 19-27.)  First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2014, and has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date.  (T. 19.)  Second, the ALJ found that Plaintiff's back disorders, knee disorders, and Factor V Leiden are severe impairments, but that Plaintiff's adjustment disorder with depressed mood is not a severe impairment.  (T. 19-20.)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 20-21.) The ALJ considered Listings 1.02 and 1.04. (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform sedentary work (as defined in 20 CFR 404.1567(a)) with a sit/stand option, defined as allowing a person to alternate between sitting and standing positions at 30 minute intervals throughout the workday; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs; no more than occasional stooping, crouching, or kneeling. Furthermore, work must not involve hazards such as dangerous moving mechanical parts or machinery that could cause bodily injury or work in high, exposed places; work must not require operation of foot controls; work must involve understanding, carrying out, and remembering no more than a few simple instructions; and no fast-paced production rate work.

(T. 21.) Fifth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 26.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ committed reversible error by failing to apply the treating physician rule in assessing the opinion of treating physician, Dr. Carguello. (Dkt. No. 10, at 3-5 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ erred in relying on the "exceptionally vague" opinion provided by consultative examiner Dr. Ganesh, and failed to recontact Dr. Carguello to clarify any ambiguity concerning his opinion. (*Id.* at 5.) Second, Plaintiff argues that ALJ committed reversible error by failing to include manipulative limitations in the RFC determination. (*Id.* at 5-7.) Third, and finally, Plaintiff argues that the ALJ committed reversible error by failing to conduct a proper credibility analysis, including failing to follow step one of the two step analysis required under the regulations. (*Id.* at 7-10.)

3

Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 13, at 5-9 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's credibility finding was proper. (*Id.* at 9-15.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized below.

### A. Whether the ALJ Erred in Assessing the Medical Opinions of Record Regarding Plaintiff's Physical Limitations

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10, at 3-5 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 404.1527(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

Here, the record contains medical opinions of Plaintiff's physical limitations from (1) consultative examiner, Kalyani Ganesh, M.D., and (2) treating physician, Patrick Carguello, D.O. (T. 327-29, 574-77.) On September 13, 2010, Dr. Ganesh diagnosed Plaintiff with status post right knee surgery, history of recurrent blood clots, history of Factor V deficiency, history of lower back and right hip pain, and status post left knee surgery. (T. 576-77.) Dr. Ganesh opined that Plaintiff had "a moderate degree of limitation" in sitting, standing, walking, climbing, lifting, carrying, pushing, pulling, and bending. (*Id.*)

Dr. Carguello submitted an affidavit, sworn to on April12, 2011, containing a summary of Plaintiff's impairments and his opinion of Plaintiff's resulting functional limitations. (T. 627-29.) Dr. Carguello stated that Plaintiff has had three knee surgeries on his right knee, and one on his left knee, lumbar spine problems, and persistent recurring episodes of thrombophlebitis. (T. 627.) Dr. Carguello stated that, on or around January 30, 2010, Plaintiff fell outside of work, which resulted in a blood clot. (T. 628.) Dr. Carguello stated that, as a result, he removed Plaintiff from work. (*Id.*) Finally, Dr. Carguello stated that x-ray examinations and an MRI of Plaintiff's lumbar spine in May 2009 confirmed that Plaintiff had bilateral joint hypertrophy at L5-S1, L4-L5, and L3-L4, a diffuse disc bulge at L5-S1, and bony spurring at L4-L5. (*Id.*)

7

Dr. Carguello opined that Plaintiff has been disabled from working "at least since he left work in late January, 2010" and would be unable to perform "even sedentary, part-time work." (T. 68.) Dr. Carguello opined that Plaintiff could not sit for more than half of an eight-hour workday, even if he could alternate between sitting and standing, was uncomfortable standing for any period, and was limited to lifting objects weighing less than ten pounds. (T. 25.) Dr. Carguello further opined that, because of numbness in his hands, Plaintiff had problems grasping and often dropped things. (T. 629.) Finally, Dr. Carguello stated that Plaintiff had extremely poor sleep and depression secondary to his physical problems, and opined that Plaintiff would be limited to following simple instructions and generally needed to take a lengthy nap during the day. (*Id.*)

In determining Plaintiff's physical RFC, the ALJ afforded significant weight to Dr. Ganesh's opinion, reasoning that the opinion is generally consistent with the overall evidence of record and that Dr. Ganesh had the opportunity to examine Plaintiff. (T. 25.) The ALJ afforded limited weight to Dr. Carguello's opinion, reasoning that the opinion was not supported by the evidence as a whole, and specifically noted that the record did not reflect that Dr. Carguello removed Plaintiff from work around January 2010. (*Id.*) Plaintiff argues that the ALJ erred by (1) failing to recontact Dr. Carguello to clarify any ambiguity concerning his opinion, and (2) relying on the "exceptionally vague" opinion provided by consultative examiner Dr. Ganesh. (Dkt. No. 10, at 5 [Pl.'s Mem. of Law].)

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. § 404.1512(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least 12 months before an application for benefits was filed, and for a longer period when there is reason

8

to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *Smith v. Astrue,* 896 F. Supp. 2d 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512[e]); *Beckwith v. Comm'r,* 13-CV-1555, 2015 WL 860763, at *6 (N.D.N.Y. Feb. 27, 2015). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1520b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5.

First, a review of Plaintiff's medical records indicated that (1) Plaintiff may have been removed from work by treating sources at Dr. Carguello's office in February 2010, and (2) the record is missing a disability document from Dr. Carguello, dated April 5, 2010. (T. 381, 384.) On February 15, 2010, Dr. Carguello noted that Plaintiff reported that he was taken out of work by a physician assistant and Dr. Kim following his fall on February 1, 2010, and that he was still not better. (T. 384.) Treatment records from Dr. Carguello's office confirm that Plaintiff was examined by a physician assistant on February 1, 2010, and by Dr. Kim on February 3, 2010, but do not specifically reference Plaintiff being taken out of work. (T. 391, 395-96.) On April 5,

9

2010, Dr. Carguello's treatment record included the note "[p]lease refer to disability document with today's date." (T. 381.) However, the referenced disability document is not included with the medical record or elsewhere in the administrative record. (*Id.*)

As discussed above, the ALJ identified a conflict in the record, noting that Dr. Carguello's opinion stated that he took Plaintiff out of work on or around January 30, 2010, yet the ALJ found that the record did not indicate that Dr. Carguello had done so. (T. 25.) The ALJ relied on that conflict as a basis to find that Dr. Carguello's opinion was not supported by the record and entitled to little weight. (*Id.*) Under the circumstances, the Court finds that the ALJ had a duty to recontact Dr. Carguello for clarification. *Beckwith*, 2015 WL 860763 at *6.

Second, liberally construed, Plaintiff argues that the ALJ erred in relying on the "exceptionally vague" opinion of Dr. Ganesh in determining that Plaintiff could perform sedentary work with additional limitations. (Dkt. No. 10, at 3-5 [Pl.'s Mem. of Law].) Although Plaintiff advances this argument only briefly, his point is well taken. Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983). As discussed above, Dr. Ganesh opined that Plaintiff had "a moderate degree of limitation" in sitting, standing, walking, climbing, lifting, carrying, pushing, pulling, and bending. (T. 577.)

The Second Circuit has found that a consultative examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff can perform the exertional requirements of sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds). The Court recognizes that use of terms like "mild" and "moderate" has been found to pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Anderson v.*

10

*Colvin,* 12-CV-1008, 2010 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) *(citing Waldau v. Astrue,* 11-CV-0925, 2010 WL 6681262, at 4 ([N.D.N.Y. Dec. 21, 2003]). However, here the ALJ found that Plaintiff's back disorders, knee disorders, and Factor V Leiden are severe impairments. (T. 19.) Accordingly, based on the current record, the Court agrees with Plaintiff that the term "moderate" in Dr. Ganesh's opinion renders the opinion too vague to establish whether Plaintiff can perform even a limited range of sedentary work.

For these reasons, remand is necessary for the ALJ to (1) obtain clarification regarding Dr. Carguello's opinion, (2) obtain a more specific opinion of Plaintiff's physical abilities and limitations from Dr. Ganesh, and (3) reevaluate the medical opinions regarding Plaintiff's physical impairments in light of any new information obtained.

### B. Whether the ALJ Erred by Not Including Manipulative Limitations in the RFC Determination

For the reasons set forth in Part III.A. of this Decision and Order, remand is required for the ALJ to develop the record and reassess Plaintiff's physical RFC based on a fully developed record. The Court adds the following analysis.

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. § 404.1545. RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's

ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ noted that Plaintiff's complaint of hand numbness was unsupported by the medical record during the relevant time period, and was inconsistent with Plaintiff's reported activities, including playing board games, occasionally playing video games, attending to personal care needs, and using a phone. (T. 24-25.) The ALJ stated that the record does not show treatment for hand problems during the relevant period or note any hand impairment. (T. 24.) Upon examination, Dr. Ganesh observed that Plaintiff had full strength in his upper extremities, full grip strength in both hands, and that his hand and finger dexterity was intact. (T. 576.) Dr. Ganesh opined that Plaintiff had moderate limitations in lifting, carrying, pushing, and pulling. (T. 24-25.)

As discussed in Part III.A. of this Decision and Order, remand is required for the ALJ to develop the record. Accordingly, remand is also required for the ALJ to reevaluate Plaintiff's physical RFC based on a fully developed record.

## C. Whether the ALJ Erred in Evaluating Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10, at 7-10 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271 (citing SSR 96-7p, 1996 WL 374186, at *2 [July 2, 1996].)

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to

> relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Rockwood*, 614 F. Supp. 2d at 271 (citing § 404.1529[c][3]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ did not make an explicit finding as to whether Plaintiff has medically determinable impairments which could reasonably be expected to produce the pain or other symptoms alleged (pursuant to the first step of the two step credibility analysis set forth above). (T. 21.) Turning to the second step of the analysis, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC. (*Id.*)

For the reasons indicated in Part III.A. of this Decision and Order, this matter is being remanded for the ALJ to develop the record. Therefore, remand is also necessary for a credibility analysis based on a fully developed record. Upon reevaluation of the Plaintiff's credibility, the ALJ must first make an express finding as to whether Plaintiff has medically determinable impairments which could reasonably be expected to produce the pain or other symptoms alleged.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: May 4, 2016
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge