UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD N. T.,

               Plaintiff,

v.

5:15-CV-0428
(GTS)

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

APPEARANCES:	OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON	STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION	PETER W. JEWETT, ESQ.
OFFICE OF REGIONAL GENERAL COUNSEL
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Richard N. T. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner"), is Plaintiff's motion for attorneys' fees and costs in the amount of twenty-three thousand, four hundred and nineteen dollars and fifty cents ($23,419.50) pursuant to 42 U.S.C. § 406(b). (Dkt. No. 26.) For the reasons stated below, Plaintiff's motion is granted.

**I.    RELEVANT BACKGROUND**

    **A.    Facts and Procedural History**

Because this Decision and Order is intended primarily for the review of the parties, the Court presumes the reader's familiarity with this Court's Order of May 4, 2016, in which the Court granted Plaintiff's motion and remanded Plaintiff's case to the Social Security Administration for further consideration. (Dkt. Nos. 15, 16.) Plaintiff filed a motion for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA") on July 6, 2016, and the parties submitted a stipulation for fees in the amount of two thousand, six hundred and eighty dollars and eighty-nine cents ($2,680.89) on July 17, 2018. (Dkt. Nos. 17, 19.) The Court approved the stipulation on the same day. (Dkt. No. 20.) Plaintiff subsequently filed the current motion for attorneys' fees pursuant to 42 U.S.C. § 406(b) on June 5, 2020. (Dkt. No. 21.)

**B.     Briefing on Plaintiff's Motion**

Generally, Plaintiff's attorney argues that he is entitled to an award of attorneys' fees in the amount of $23,419.50. (Dkt. No. 21, Attach. 2 [Pl.'s Mem. of Law].) More specifically, Plaintiff's attorney argues that his motion for fees is timely because (a) it was filed one day after receipt of the Social Security Administration's June 1, 2020, notice and only four days after that notice was issued, and (b) that notice is the only notice Plaintiff's attorney has received from the Administration, as he has not to date received the Notices of Award related to the ALJ's August 8, 2019, fully favorable decision. (*Id.* at 4-5.) Plaintiff's attorney also argues that the fee requested is reasonable because (a) it is within the 25-percent of past-due benefits allowed under law, (b) it is justified by the significant risk of loss that is the result of the contingency fee nature of Social Security litigation, (c) it is justified by the favorable results and effectiveness of counsel's representation in this matter, and (d) Plaintiff's attorney did not cause any delay in these proceedings. (*Id.* at 7-10.)

Generally, Defendant argues the following: (a) although Plaintiff's attorney filed his motion within 14 days of the June 1, 2020, notice letter, he filed it a significant time after the 2017 award letters submitted with Plaintiff's motion; (b) the amount requested by Plaintiff's attorney is 25-percent of past-due benefits and thus appropriate under the law; (c) the *de facto* hourly rate requested is within the range of what has been approved by courts in the Second Circuit and there is no evidence of fraud or overreach; and (d) if the Court approves Plaintiff's attorney's request for fees, it should require Plaintiff's attorney to remit the amount of EAJA fees he has already received back to Plaintiff. (Dkt. No. 23 at 2-4 [Def.'s Response Mem. of Law].)

## II.     GOVERNING LEGAL STANDARD

Section 206(b) of the Social Security Act states that, "[w]henever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S.C. § 406(b)(1)(A). The Supreme Court has held that Section 406(b) "does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court," but rather "calls for court review of such arrangements as an independent check to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). If the fee set by the contingency-fee agreement is within the 25-percent boundary established by Section 406(b), then "the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." *Gisbrecht*, 535 U.S. at 807. For assessing reasonableness of a fee set by a contingency agreement, the Supreme Court noted that multiple

3

factors should be considered, including the character of the representation, the results the representative achieved, and whether the attorney was responsible for delay in the litigation in order to increase fees. *Id.* at 808.

The Second Circuit has noted that contingency-fee agreements ordinarily should be afforded the same deference that the court would apply to any contract between parties where it is a "freely negotiated expression of both a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). District courts therefore must look first to the contingency-fee agreement and reduce the amount specified in that agreement only when it finds the amount to be unreasonable. *Wells*, 907 F.2d at 371. When determining whether the fee is reasonable, the district court "need not make mathematical calculations," but should (a) determine whether the amount requested is within the 25-percent cap, (b) consider whether there has been fraud or overreaching in making the agreement, and (c) consider whether the amount is so large as to be a windfall to the attorney. *Id.* at 372.

Until recently, the Second Circuit was unsettled as to when a motion for attorneys' fees must be filed under Section 406(b). *Sinkler v. Berryhill*, 932 F.3d 83, 85 (2d Cir. 2019); *Russell W v. Comm'r of Social Security*, 16-CV-0008, 2019 WL 5307315, at *2 (N.D.N.Y. Oct. 21, 2019) (D'Agostino, J.). "On August 2, 2019, the Second Circuit held that motions for attorneys' fees under 42 U.S.C. § 406(b) are subject to Rule 54(d)(2)(B)'s fourteen-day filing period." *Russell W.*, 2019 WL 5307315, at *2 (citing *Sinkler*, 932 F.3d at 85). "Where . . . a Social Security claimant secures a judgment reversing a denial of benefits and remanding for further

proceedings, the fourteen-day filing period is tolled until the claimant receives notice of the amount of any benefits award. That is because the benefits award amount is necessary to identify the maximum attorney's fee that may be awarded under § 406(b)." *Sinkler*, 932 F.3d at 85. In other words, the "fourteen-day filing period is subject to equitable tolling." *Russell W.*, 2019 WL 5307315, at *2. The "Second Circuit indicated that the fourteen-day period begins to run '[o]nce counsel receives notice of the benefits award [.]'" *Id.* (emphasis in original) (quoting *Sinkler*, 932 F.3d at 88). The law presumes that a party receives communications three days after mailing (*Sinkler*, 932 F.3d at 89 n.5) and that notice is mailed to the counsel of record and claimant at the same time. *Russell W.*, 2019 WL 5307315, at *2.

### III.   ANALYSIS

After carefully considering Plaintiff's arguments and the applicable case law, the Court awards Plaintiff's attorney the requested $23,419.50 in attorney's fees and costs for the reasons stated in both Plaintiff's memorandum of law and Defendant's response memorandum of law, and directs further that Plaintiff's attorney must return to Plaintiff the $2,680.89 in EAJA fees already received. (Dkt. Nos. 21, 23.) The Court adds the following analysis.

As to the timeliness of Plaintiff's motion for fees, the Court finds that Plaintiff has adequately shown that this motion is timely pursuant to *Sinkler*. In *Sinkler*, the Second Circuit stated that, "[w]here, as here, a district court judgment reverses a denial of benefits to a claimant and remands for further agency consideration of benefits, the parties—as well as seven of our sister circuits to have considered the question—agree that the district court may await the conclusion of the remand proceedings to consider a § 406(b) attorney's fee application." *Sinkler*, 932 F.3d at 86. Here, the Court rendered its judgment remanding for further administrative

5

proceedings on May 4, 2016. (Dkt. Nos. 15, 16.) Plaintiff's attorney acknowledges that he received the Notices of Award related to the ALJ's subsequent partially favorable decisions on July 11 and July 28, 2017, which included specifications of the amount of attorney's fees that were withheld from Plaintiff's past-due benefits at that time. (Dkt. No. 21, Attach. 1, at 3 [Dolson Aff.].) However, he also indicates that he appealed that partially favorable decision to the Appeals Council, which remanded for further consideration on September 28, 2018, pursuant to which the ALJ issued a subsequent fully favorable decision on August 8, 2019. (*Id.*)

The question is therefore whether the "remand proceedings" resulting from the Court's Judgment ended after the ALJ's 2017 partially favorable decisions, or whether they continued until Plaintiff obtained a fully favorable decision in August 2019. The Court finds that, under the circumstances presented here, it would have been unreasonable to expect Plaintiff's attorney to file a motion for fees based on the 2017 Notices of Award while continuing to pursue an appeal with the Appeals Council. In particular, although Plaintiff's attorney has not submitted a copy of the Appeals Council's remand order or any details about its findings, as a general practical matter, a remand by the Appeals Council vacates (at least in part) the ALJ's decision below and requires a new ALJ decision to be made. Given that the Appeals Council remanded and the ALJ subsequently issued a new fully favorable decision on remand, it is not clear that the Notices of Award that were related to the previous (remanded) 2017 ALJ decisions have any effect.

The Court is particularly cognizant of the fact that the specific circumstances here are fairly uncommon. As opposed to other, more typical cases where (a) the ALJ issues an unfavorable decision on remand from this Court, which is then subsequently appealed to the Appeals Council and ultimately results in a favorable decision, or (b) the ALJ issues a favorable

decision on remand from this Court and no appeal is taken (or necessary), this case resulted in an issuance of a Notice of Award while the parties still had issues remaining to litigate (i.e., the period of time between 2010 and 2015 during which the ALJ found in 2017 that Plaintiff was not disabled). In these more typical cases, no Notice of Award would have cause to be issued until the final decision is rendered by the Commissioner. In this case, however, the initial partially favorable decision triggered a Notice of Award, but that decision did not constitute the final Agency decision due to Plaintiff's ultimately successful appeal. It would hardly be reasonable to expect an attorney to file a motion for fees at the same time he is continuing to litigate a portion of a claim that would have a direct impact on the amount of past due benefits to which his client would be entitled (and which would form the basis of his fee award under Section 406[b]).

       The Court does not interpret the rationale in *Sinkler* as suggesting a contrary finding. Although the Second Circuit noted in *Sinkler* that there is no impediment to a district court considering a motion to adjust a Section 406(b) award based upon an adjustment of that award by the Social Security Administration after the award is granted by the Court, the Second Circuit contemplated this in the context of routine re-adjustments, such as when a plaintiff takes an appeal of the amount of past-due benefits calculated by the Commissioner or to offset Worker's Compensation or dependent benefits. *Sinkler*, 932 F.3d at 88. In this case, more than a routine readjustment would have been required; rather, the result of the successful appeal that led to the 2019 fully favorable decision was that Plaintiff became legally entitled to approximately five years of past-due benefits to which he had not been entitled at the time the 2017 Notices of Award were calculated. Additionally, in the situation before the Second Circuit in *Sinkler*, the Notice of Award was issued after the final determination of the Commissioner, not in the middle

of an ongoing appellate process. As a result, the Court finds that nothing in *Sinkler* would lead to the conclusion that Plaintiff's attorney was required to have filed a motion for Section 406(b) fees after receiving the 2017 Notices of Appeal given that he was appealing that decision.

The Court therefore finds that the timeliness of Plaintiff's motion should be construed relative to the August 2019 ALJ decision and the award issued as a result thereof. Plaintiff's attorney argues that he has not received the Notices of Award from the Social Security Administration related to the decision of August 8, 2019, despite "diligent attempts" to obtain those Notices, and that the first notice he received about the amount of fees was a letter dated June 4, 2020. (*Id.* at 2-3.) Because there is therefore no evidence to establish (or even suggest) that Plaintiff or his attorney received notice of the relevant award before June 4, 2020, the Court finds that Plaintiff's attorney's filing of his motion on June 5, 2020, is timely pursuant to *Sinkler*.

As to the reasonableness of the fee sought, the Court finds that (a) the amount requested is within the 25-percent range allowable by law, (b) there is no evidence or allegation of fraud or overreach in the making of the agreement, and (c) the amount is not so large as to constitute a windfall for Plaintiff's attorney. Notably, the *de facto* hourly rate applicable to Plaintiff's request is $1,684 ($23,419.50 total fees, divided by 13.9 hours expended). (Dkt. No. 21, Attach. 1, at 6.) The Court finds that, in the circumstances, such rate would not constitute a windfall, given that (a) Plaintiff's attorney received successful results in a relatively conservative amount of time, (b) he subsequently obtained both a partially favorable and then a fully favorable decision for Plaintiff through diligent appeals, and (c) he has significant experience in handling social security cases. *See Bate v. Berryhill*, 18-CV-1229, 2020 WL 728784, at *2 (S.D.N.Y. Jan. 13, 2020) ("To determine whether an award constitutes a windfall for counsel, courts consider

the following factors: [1] whether the attorney's efforts were particularly successful, [2] whether there is evidence of the effort expended by the attorney which involved real issues of material fact and required legal research, and [3] whether the case was handled efficiently due to the attorney's experience in handling social security cases."). The fact that the *de facto* hourly rate is somewhat higher than normally seen is not by itself a reason to find the award to be a windfall, particularly where, as here, the higher hourly rate is the result of the attorney's efficiency. *See Bate*, 2020 WL 728784, at *3 (noting that counsel "should not be penalized for working efficiently in this case compared to other attorneys who might have taken longer to perform the same work," and that "it is inappropriate to exclusively rely on the *de facto* hourly rate, as both the Supreme Court and the Second Circuit have explicitly rejected the lodestar method to determine what is reasonable under § 406[b]").

Plaintiff's attorney has also expressly acknowledged his obligation to refund to Plaintiff the amount of the EAJA award ($2,680.89) received previously as a condition of this award. Additionally, Defendant has expressed no objections to Plaintiff's request for attorneys' fees. (Dkt. No. 23.) This fact, while not determinative, provides additional support to the Court's finding that the application is reasonable.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for attorney fees and costs (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Plaintiff is awarded attorneys' fees and costs in the amount of **TWENTY THREE THOUSAND, FOUR HUNDRED AND NINETEEN DOLLARS AND FIFTY CENTS ($23,419.50)** pursuant to 42 U.S.C. § 406(b); and it is further

**ORDERED** that, upon receipt of these fees, Plaintiff's attorneys shall refund to Plaintiff the two thousand, six hundred eighty dollars and eighty-nine cents ($2,680.89) in fees obtained pursuant to the EAJA.

Dated: October 5, 2020
       Syracuse, New York

_____
Glenn T. Suddaby
Chief U.S. District Judge